**In re LOWE, Charles C., Jr., Debtor.**

**Bankruptcy No. 99–07746–6J7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

March 29, 2000.

David Wildman, Melbourne, FL, for debtor.

Leigh R. Meininger, Orlando, FL, Chapter 7 Trustee.

David J. Volk, Melbourne, FL, for movant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEBTOR'S MOTION TO AVOID JUDICIAL LIEN AGAINST EXEMPT HOMESTEAD REAL PROPERTY

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on January 4, 2000, on Charles C. Lowe's Motion and Affidavit to Avoid Judicial Lien Against Homestead Real Property Pursuant to 11 U.S.C. § 522(f)(1) (the "Motion") (Doc. No. 11). The Debtor, Charles C. Lowe, seeks to avoid a lien placed on his home by his former spouse, Linda Cipriano, in the Final Judgment of Dissolution of Marriage entered in Brevard County by the Eighteenth Judicial Circuit Court on December 14, 1998 (the "Dissolution"). (Debtor's Exhibit No. 2.) After considering the testimony, documentary exhibits, and the applicable law, the Motion is granted.

*Undisputed Facts.* The facts are undisputed. The Debtor and Ms. Cipriano were married in 1989. The Dissolution was entered nine years later in December, 1998. The Debtor purchased his home in March, 1984, prior to his marriage to Ms. Cipriano. Mr. Lowe is the sole title owner of the home. Ms. Cipriano never had any legal interest in the home.

The Dissolution entered in the divorce action granted Ms. Cipriano a lien on the homestead in the amount of $22,500. (Debtor's Exhibit No. 2.) Paragraph 4 of the Dissolution titled "alimony" provides that, "[t]he parties' financial affidavits and testimony reflect that each of them has the current ability to live within their respective means. Accordingly, no award of

spousal support is needed by either party at this time."

Paragraph 5 of the Dissolution titled "equitable distribution of assets and liabilities" provides a factual background. Ms. Cipriano brought $48,000 to the marriage. Mr. Lowe brought the homestead property and $95,000 to the marriage. The home appreciated in value by $42,000 during the parties' marriage. In order to equalize the division of assets in the marital estate, the state court provided in subsection (f) of paragraph 5 of the Dissolution that "[t]he wife is awarded the sum of $22,500.00 as lump sum alimony to achieve the following equitable distribution of the marital estate." Mr. Lowe was directed to pay the $22,500 award (the "Award") in monthly installments over a ten-year period beginning in January, 1999, and to sign a second mortgage on the homestead securing payment of the Award. Mr. Lowe has made no payments to Ms. Cipriano. He also has refused to sign a promissory note or second mortgage encumbering the home as required by the Dissolution.

In the Motion, the Debtor seeks to avoid the lien created in the Dissolution that secures payment of the Award and that encumbers his homestead property. Section 522(f) of the Bankruptcy Code [1] controls. The issues raised are whether Section 522(f) is applicable to liens imposed under final judgments awarded in divorce actions against Florida homestead property and whether the Award in this case constitutes alimony or a property settlement.

■ *The 1994 Amendments to Section 522(f).* In 1994, Section 522(f) was amended specifically to address liens in marriage dissolution proceedings. The 1994 Amendments to Section 522(f)(1) of the Bankruptcy Code added the additional highlighted references to judicial liens involving alimony and support:

§ 522. Exemptions

(f)(1) Notwithstanding any waiver of exemptions **but subject to paragraph (3)**, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, **other than a judicial lien that secures a debt—**

**(i) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement; and**

. . .

Prior to 1994, courts analyzed the character of the divorce award to determine whether the award constituted a "judicial lien" as defined in § 101(36).[2] Typically, courts concluded that the term "judicial lien" included liens created in dissolution orders. *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991); *Maus v. Maus,* 837 F.2d 935 (10th Cir.1988); *In re Pederson,* 875 F.2d 781 (9th Cir.1989).

With the addition of Section 522(f)(1)(A)(i), Congress expressly has made liens awarded in divorce decrees applicable to the provisions of Section 522(f). If a lien arising from a divorce judgment secures a debt for alimony, support or maintenance, the lien is a judicial lien and is *not* subject to avoidance under Section 522(f). However, if the lien awarded in a

---

**1.** Unless stated otherwise, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

**2.** Section 101(36) of the Bankruptcy Code defines a judicial lien to include any "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;"

divorce judgment is related to any obligation *other* than alimony, support or maintenance, the judicial lien is avoidable as long as all the other requirements of Section 522(f) are satisfied. No question exists that, in this case, the Award and the resulting lien were imposed in the Dissolution, a judgment entered in a legal or equitable proceeding. The lien is a "judicial lien" that is avoidable as long as all other requirements of Section 522(f) are met and the award was not for alimony, support or maintenance.

■ *Section 522(f)(1)(A) is Applicable to Florida Homestead Property.* Initially, Ms. Cipriano contends judicial liens encumbering Florida homestead are not avoidable under Section 522(f) because of Florida's unique exemption system. Section 522(f) requires that the fixing of a lien ". . . impair[s] an exemption . . ." Some courts question whether Section 522(f)(1)(A) applies to Florida's broad homestead exemption because no judicial lien can actually impair or, stated differently, beat the homestead protection. The Florida homestead exemption, under Article X, Section 4, of the Florida Constitution, provides that "[t]here shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon. . ." A judgment lien is unenforceable on Florida homestead real property from the time the property has acquired the status of homestead until the property loses its homestead status. The Constitutional provision states that no judgment can constitute a lien on homestead property.

Most courts reaching the issue of whether a judicial lien can impair Florida homestead property have held that a judgment lien, although presently unenforceable, does in fact impair the homestead exemption. See, *In re Thornton,* 186 B.R. 155, 157 (Bankr.M.D.Fla.1995); *In re Watson,* 116 B.R. 837, 838 (Bankr.M.D.Fla.1990); *In re Calandriello,* 107 B.R. 374, 375–76 (Bankr.M.D.Fla.1989), *aff'd,* 174 B.R. 339 (M.D.Fla.1992); *In re Cannon,* 243 B.R.

153 (Bankr.S.D.Fla.2000); *In re Bird,* 84 B.R. 858 (Bankr.S.D.Fla.1988). These courts reasoned that, although the lien is unenforceable, the lien still creates a cloud on the title by the mere fact the lien was recorded in the public records. Recordation of a lien, even if unenforceable, is sufficient to impair the debtor's homestead exemption.

Other courts conversely have held that mere recording of a presently unenforceable lien does not impair the homestead exemption. Thus, Section 522(f)(1)(A) is inapplicable. *See e.g., In re Jackson,* 86 B.R. 251, 252 (Bankr.N.D.Fla.1988); *In re Goodwin,* 82 B.R. 616, 617–18 (Bankr. S.D.Fla.1988). With little analysis, these few courts reasoned that, because there is no present impairment of the homestead exemption as required by Section 522(f), the Bankruptcy Code should not avoid the lien. Only if the home was to be sold or if some other change occurred in the character of the property would these courts find that the judicial lien impaired the homestead exemption.

This Court agrees with the majority opinion. Any lien on homestead real property creates a cloud on the title and renders the title unmarketable. The cloud on the title clearly impairs the homestead exemption. The Bankruptcy Code seeks to prevent just such an impairment by avoiding the lien and giving the debtor a true fresh start and the ability to enjoy his exempt property, with only a few exceptions. Section 522(f)(1)(A) is applicable to real property protected by Florida's homestead exemption. The next issue is whether this particular lien is subject to avoidance.

*Application of Section 522(f)(1)(A) to the Award.* Section 522(f)(1)(A) does not allow a debtor to avoid a judicial lien that secures a debt to "a spouse, former spouse . . . for alimony to, maintenance for, or support of such spouse . . . in connection with a . . . separation agreement, divorce decree or other order of a court of record, determination made in accordance with

State or territorial law by a governmental unit, or property settlement agreement...." The code directs that this exemption does not extend to "alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support...." [3] In other words, similar to an analysis under Section 523(a)(5), a court should disregard the labels placed on the awards by the state and attempt to discern the true nature of the award. *Campbell v. Campbell (In re Campbell)*, 74 B.R. 805, 809 (Bankr. M.D.Fla.1987). The language of Section 522(f)(1)(A)(i) is the same as Section 523(a)(5). Therefore, cases decided under Section 523(a)(5) are helpful in determining whether the Award in this case is in the nature of alimony, maintenance, or support.

▮ In determining what constitutes alimony, maintenance or support, federal law, not state law, is applied. *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 906 n. 6 (11th Cir.1985); *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984). Looking to substance over form, a bankruptcy court should disregard labels applied in the order creating the obligation and make its own determination. *Campbell*, 74 B.R. at 809.

▮ Courts examine various factors in deciding whether an award is alimony, or, instead, is an equitable distribution of marital assets. *Hixson v. Hixson (Matter of Hixson)*, 23 B.R. 492 (Bankr.S.D.Ohio. 1982), *Burch v. Burch (In re Burch)*, 100 B.R. 585, 589 (Bankr.M.D.Fla.1989) and *Johnson v. Johnson (Matter of Johnson)*, 156 B.R. 338, 341 (Bankr.M.D.Fla.1993). In those cases, the courts listed the following relevant factors:

1. The express terms of the judgment of dissolution,

2. The relative incomes of the parties at the time of the judgment of dissolution,

3. The length of the marriage,

4. The number and age of children,

5. The amount of child support,

6. Whether the obligation terminates upon death or remarriage of either party,

7. Whether the obligation is payable in installments over an extended period of time,

8. The level of education of the parties,

9. The health of the parties,

10. The probable need for support,

11. The property brought to the marriage by either party, and

12. Whether the payments are intended as economic security.

Further, the express terms of the final order typically articulate the intent of the state court and are very persuasive.

▮ In this case, the Dissolution patently refers to the Award as an equitable distribution, categorizes the Award as such via paragraph headings, and expressly does not award alimony or any other form of support. (Debtor's Exhibit No. 2.) The difference in incomes of the parties is negligible. (Debtor's Exhibit No. 3.) Indeed, the state court found that neither party required support by the other. The marriage lasted only nine years; there are no children and no provision for termination of the Award due to death or remarriage of Ms. Cipriano. The parties are healthy. The Award was not intended as economic security but to equitably divide the assets of the marital estate. Although the obligation is payable in installments over time,

---

**3.** Congress made a drafting error when amending Section 522(f)(1)(A). If read carefully one could conclude that a lien for alimony support, or maintenance is protected, unless it is actually for alimony support or maintenance. This interpretation would make little sense. The amendment is direct-ed at providing protection for alimony, maintenance, or support. Congress intended liens for alimony, support and maintenance to survive bankruptcy, not be avoided. *See,* Sections 507(a)(7); 523(a)(5) & 547(c)(7); See 4 Collier on Bankruptcy, ¶ 522.11[5] at 522–88 (15th Ed.1999).

the other elements indicate the Award was not intended to provide Ms. Cipriano with support. Based on the weight of these factors, the Court finds that the Award is an equitable distribution of marital assets and is not in the nature of alimony, maintenance, or support. Therefore, the judicial lien securing payment of the Award is subject to avoidance.

*Conclusion.* In many instances a bankruptcy follows a divorce. In this case, the Dissolution established a judicial lien impairing the Debtor's homestead exemption. The Award was an equitable distribution of marital assets and not in the nature of alimony, maintenance, or support. The lien is subject to avoidance under Section 522(f)(1). The Motion is granted. The lien on the homestead is avoided. A separate order in accordance with these Findings of Fact and Conclusions of Law shall be entered.